IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-02589-REB-KLM

MICHAEL BACOTE,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
G. SANDUSKY, Correctional Officer, and
A. BALSICK, Correctional Officer,

Defendants.

## AMENDED COMPLAINT

Plaintiff Michael Bacote, respectfully complains as follows against defendants the Federal Bureau of Prisons, G. Sandusky, and A. Balsick (collectively, "Defendants").

### I. NATURE OF THE ACTION

1. This lawsuit concerns the Federal Bureau of Prisons ("BOP") and BOP's staff treatment of Michael Bacote, a prisoner housed at the United States Penitentiary Administrative Maximum facility in Florence, Colorado ("ADX"). Michael Bacote seeks declaratory and injunctive relief requiring BOP to comply with its existing policies regarding the treatment of mentally ill prisoners, and with the requirements of the Eighth Amendment regarding medical treatment for individuals who have been committed to its custody.

2004780544_1

EXHIBIT A

2.     Michael Bacote also seeks monetary damages for Defendants G. Sandusky's and A. Balsick's retaliation against him for his lawful participation in activity protected by the First Amendment.

## II.     JURISDICTION

3.     This Court has subject matter jurisdiction over the allegations in this Complaint based on 28 U.S.C. § 1331, in that the claims for injunctive relief and damages arise under the United States Constitution and federal statutes. The request for declaratory relief is based upon 28 U.S.C. § 2201—an actual controversy exists between Defendants and Bacote over Defendant BOP's continuing denial of Bacote treatment in violation of Bacote rights guaranteed by the United States Constitution.

## III.     VENUE

4.     Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b), because a substantial part of the acts or omissions that give rise to Plaintiff's claims occurred or will occur in the District of Colorado.

## IV.     PARTIES

5.     Plaintiff, Bacote, is currently housed at ADX. He suffers from serious mental illness, including Major Depressive Disorder with Psychotic Features and symptoms of PTSD. He is also mentally retarded, functionally illiterate, and suffering the long-term effects of a serious closed head injury.

6. Defendant BOP is a federal law enforcement agency subdivision of the United States Department of Justice, and is responsible for the administration of federal prisons, including ADX. The BOP maintains physical custody of Bacote, and is charged with establishing policies and regulations that are safe, humane, and secure for all federal penitentiaries.

7. Defendant G. Sandusky is a correctional officer who works, or used to work, at ADX. He is sued herein in his individual capacity.

8. Defendant A. Balsik is a correctional officer who works, or used to work, at ADX. He is sued herein in his individual capacity.

### V.  MENTAL-HEALTH ALLEGATIONS

9. Bacote has suffered serious mental disabilities throughout his life. While in primary school, he repeated kindergarten and the first grade twice, and repeated the second grade three times. Tests conducted while Bacote was in the second grade found his reading levels to be at a pre-kindergarten level. At age twelve, he was still in the fourth grade. Bacote stopped going to school when he was thirteen.

10. Psychiatric and mental tests performed on Bacote as a teenager confirmed that he is illiterate, and he tested far below his age group in every tested subject. As a twelve year old, Bacote scored a language age equivalent of 7 years, 3 months on the Utah Tested Language Development exam. In the Wide Range Achievement Test - Revised (WRAT-R), also at age twelve, he scored in the first percentile in spelling, the 0.1 percentile in reading, and the 0.04 percentile in arithmetic.

11. Bacote was prescribed medication for psychiatric problems at an early age, including the antipsychotic Mellaril; he began taking Adderall for attention deficit disorder at age twelve.

12. In connection with his prosecution for his role in a murder that occurred at USP Beaumont, psychologist Dr. Ray Coxe conducted an evaluation of Bacote's mental functioning. Dr. Coxe's tests found that Bacote had a Full Scale IQ in the mildly impaired range of sixty-one, and Verbal and Performance IQs in the first percentile. Bacote tested at the second grade level for reading and spelling, and at the third grade level for arithmetic. Based on these results, his personal interaction with Bacote, and prior examination results from earlier in Bacote's life, Dr. Coxe diagnosed Bacote as suffering from mild mental retardation.

13. In 2003 or thereafter, Bacote was diagnosed by BOP psychiatrists as having recurrent Major Depressive Disorder. Bacote has been prescribed medication to treat this condition.

14. Bacote has also been observed by BOP psychiatrists as displaying severe Paranoid Ideation. And, while a prisoner at USP Beaumont, Bacote was prescribed the antipsychotic Risperdal to treat his paranoid behavior. At ADX, Bacote has again displayed Paranoid Ideation. For example, Bacote has alleged that there is a staff conspiracy to kill him.

15.     While housed at USP Beaumont, Bacote repeatedly alleged that the staff was planning to hang him in recreation cell #6, claiming that he had already informed his family and attorney of his impending murder, and advising his BOP psychiatrist to skip their next scheduled session so that the psychiatrist would not "get caught up" in the legal troubles surrounding Bacote's murder.

16.     Defendant BOP is aware that Bacote suffers from Major Depressive Disorder and Paranoid Ideation; Bacote received these diagnoses from BOP psychiatrists. Defendant BOP is also aware that Bacote suffers from mild mental retardation, because Dr. Coxe's report, which diagnoses him with mild mental retardation, was provided to Dr. Clemmer, a BOP employee who works at ADX.  However**,** Defendant BOP has refused Bacote's repeated requests for mental health assistance.

17.     In August 2009, Bacote requested treatment for his mental illness and mental retardation and to be transferred from ADX. That request was denied; Defendants stated that "a review of your file does not indicate you are mentally ill or mentally retarded."

18.     In April 2011, Bacote requested treatment for his mental retardation, and transfer to another facility. That request was denied. Defendant BOP claimed that Bacote did not meet its criteria for a diagnosis of mental retardation. Nor did Bacote qualify for a transfer, Defendant BOP determined.

19. On or around July 26, 2011, July 31, 2011, August 7, 2011, and August 8, 2011, Bacote filed Cop-Outs to ADX prison officials, requesting treatment for his mental illness and mental retardation. These requests were denied. Bacote is illiterate. However, he managed to complete this paperwork with the assistance of other prisoners.

20. Bacote has exhausted all required conditions precedent to the commencement of this lawsuit, including his available administrative remedies pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

21. Bacote's paranoia also strongly affects his willingness to take medication. In the past, Bacote has alleged that the pills he is prescribed change in shape and color every day. He sees this as evidence that the medication is being tampered with in an attempt to kill him. He has claimed that certain pills he has received make him feel "intoxicated."

22. A BOP physician has prescribed psychotropic medication for Bacote's serious mental illness. Bacote wants and needs that medication. However, Bacote is extremely paranoid and fearful that the physician assistant responsible for delivering his medication will intentionally or accidentally give him the incorrect medication. The BOP currently insists that Bacote receive his medication crushed up in a cup. Bacote has repeatedly asked to receive his medication, which he recognizes, in solid pill form, or alternatively that he be allowed to see the medication in whole pill form before it is crushed. The BOP has refused both requests. As a result, Bacote has been forced to

choose between foregoing needed medication or consuming an unknown crushed substance he genuinely (rightly or wrongly) believes will make him sick or kill him. As of the time of this complaint, he was electing the former course for his depression medicine and thus is struggling to cope with his severe depression and paranoia without his medication.

23. Bacote does not currently receive any mental health treatment, nor has he received a proper mental health diagnosis.

24. Defendant BOP's regulations forbid housing prisoners with serious mental illnesses—like Bacote—at ADX. Defendant BOP thus violates its own regulations by housing Bacote at ADX.

## VI. RETALIATION ALLEGATIONS

25. Based on allegations similar to the mental health allegations raised above, Bacote served as the lead-Plaintiff in a class action Complaint (the "Lawsuit"). *See Cunningham v. BOP*, 1:12-cv-01570-RPM-MEH. More precisely, through the Lawsuit Bacote sought declaratory and injunctive relief regarding Defendant BOP's compliance with its own existing policies regarding the placement and treatment of mentally ill prisoners at ADX and with the requirements of the Eighth Amendment regarding mental health care for all prisoners who have been committed to Defendant BOP's custody at that facility.

26. The Lawsuit has the potential to disrupt BOP's operations at ADX. For example, the Lawsuit could force Defendant BOP to change how it screens and treats mental health issues.

27. In addition to potentially requiring onerous, disruptive changes to ADX's system, the Lawsuit resulted in negative media attention concerning the employees, including the correctional officers, employed at ADX.

28. After Bacote was named as the lead-Plaintiff in the Lawsuit, Defendants Sandusky and Balsik—correctional officers at ADX—began withholding Bacote's food.

29. Defendants Sandusky and Balsik severely restricted Bacote's food rations and intentionally deprived Bacote of meals as a direct consequence of Bacote joining the Lawsuit.

30. Defendants Sandusky and Balsik told Bacote that his food deprivation was a consequence of Bacote's participation in the Lawsuit. The correctional officers encouraged Bacote to withdraw from the Lawsuit. They additionally used Bacote's inadequate nutrition, mental health issues, and placement in solitary confinement as tools to manipulate Bacote.

31. As a result of Bacote's substantial deprivation of adequate food, Bacote experienced stomach pain, headaches, dizziness, confusion, and exhaustion. Bacote's deprivation exacerbated his serious mental illness and he lost weight.

32. After approximately one month of receiving inadequate nutrition, Bacote withdrew from the Lawsuit.

33. After he withdrew from the Lawsuit, Bacote began to receive adequate nutrition. Bacote's symptoms abated once he withdrew from the Lawsuit and Bacote gained back the weight he had lost.

34. Bacote has exhausted all required conditions precedent to the commencement of this lawsuit, including his available administrative remedies pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

## VII.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of the Eighth Amendment to the United States Constitution—
Failure to Diagnose against Defendant BOP**

35. Bacote incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

36. Defendant BOP's policies and practices subject Bacote to a substantial risk of serious harm and injury by failing to establish and maintain a program or practices to adequately screen and diagnose his serious mental illnesses. Defendant BOP has been deliberately indifferent to this substantial risk of serious harm to Bacote.

37. Defendant BOP has been and is aware of all the deprivations complained of herein, and has condoned or been deliberately indifferent to such conduct, and to Bacote's serious medical needs.

38. Defendant BOP's policies and practices are the proximate cause of the deprivation of Bacote's rights under the Eighth Amendment.

## SECOND CLAIM FOR RELIEF
### Violation of the Eighth Amendment to the United States Constitution—Failure to Treat against Defendant BOP

39. Bacote incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

40. As described herein, by its policies and practices, Defendant BOP subjected Bacote to a substantial risk of serious harm and injury by failing to establish and maintain a program to provide Bacote with adequate mental health treatment.

41. Defendant BOP has been and is aware of all the deprivations complained of herein, and has condoned or been deliberately indifferent to such conduct, and continues to exhibit deliberate indifference to Bacote's serious medical needs.

42. Defendant BOP's policies and practices proximately cause ongoing deprivation of Bacote's rights under the Eighth Amendment.

## THIRD CLAIM FOR RELIEF
### Violation of the First Amendment to the United States Constitution—Retaliation for a Protected Activity against Defendants Sandusky and Balsik

43. Bacote incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

44. As described herein, Bacote was engaged in protected conduct, the Lawsuit seeking relief for BOP's failure to provide adequate mental health treatment to prisoners.

45. As a direct consequence of Bacote's protected conduct, Defendants Sandusky and Balsik subjected Bacote to substantial risk of serious harm and injury by failing to provide him adequate nutrition over a prolonged period of time.

46. Bacote's entitlement to adequate nutrition is clearly established under Tenth Circuit and United States Supreme Court precedent.

47. Defendants Sandusky and Balsik were personally involved in violating Bacote's clearly established right to access the courts.

48. But for Bacote's participation in the Lawsuit, Defendants Sandusky and Balsik would not have deprived Bacote of adequate nutrition.

49. Bacote suffered serious mental, emotional, and physical harm as a result Sandusky's and Balsik's deliberate indifference.

## VIII.  **PRAYER FOR RELIEF**

1. Enter an Order transferring Bacote to a prison facility equipped to address Bacote's serious mental illness.

2. Enter an injunction directing that Defendant BOP implement a program of mental health screening and diagnosis for the benefit of Bacote.  This program shall include the staffing of mental health professionals to ADX to provide the screening and diagnosis services required hereby.  The program shall provide, at a minimum, the following:

      a.      A mental health examination for Bacote to determine the presence or absence of serious mental illness.

      b.      An annual mental health examination, and regular mental health rounds by a mental health professional, to facilitate early detection and treatment of Bacote's serious mental illness.

      c.      A procedure for Bacote to establish a diagnosis by a mental health provider independent of the BOP.

3.      Enter an injunction directing that Defendant BOP implement a program of treatment for Bacote's serious mental illness as follows:

      a.      Staffing of mental health professionals at ADX to administer the program of mental health treatment;

      b.      Bi-weekly access to out-of-cell private psychotherapy;

      c.      Monthly access to confidential psychiatry sessions;

      d.      Access to at least 5-10 hours per week of out-of-cell therapeutic activity;

      e.      Access to at least 10 hours per week of out-of-cell recreational activity that allows for socialization with other prisoners;

      f.      Regular and scheduled receipt of all prescribed medication;

      g.      Not housing Bacote in any unit in which medications are not provided; and

      h.      Treatment planning team meetings three times annually.

4.      Award Bacote monetary damages against Defendants Sandusky and Balsik for their intentional deprivation of Bacote's First Amendment right to access the courts.

5.      Grant an award of attorneys' fees.

6.      Grant such other relief as this Court deems just and proper.

Dated May 16, 2014                                      Respectfully submitted,

                                                        LEWIS ROCA ROTHGERBER

                                                        */s/ Brent R. Owen*
                                                        Brent R. Owen, No. 45068
                                                        1200 17th Street, Suite 3000
                                                        Denver, CO 80202-5839
                                                        Tel:   (303) 623-9000
                                                        Fax:   (303) 623-9222
                                                        E-mail: bowen@lrrlaw.com
                                                        *Attorney for Michael Bacote*

Address of Plaintiff, Michael Bacote:
United States Penitentiary Administrative Maximum—ADX
P.O. Box 8500
Florence, CO  81226